# Exhibit 2

Case 1:26-cv-05997 Document 58-2 Filed 10/28/26 Page 2 of 33

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HELLSTAR STUDIOS INC.,

Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,

Defendants.

Case No. 26-cv-05997

**COMPLAINT**

Jury Trial Demanded

Plaintiff HELLSTAR STUDIOS INC. ("Plaintiff" or "HELLSTAR") hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, unincorporated associations and foreign entities identified on Schedule A[1] to this Complaint (collectively, "Defendants"):

**INTRODUCTION**

1. This action has been filed by Plaintiff to combat online counterfeiters who trade on Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's trademarks, which are covered by U.S. Trademark Registration Nos. 6,568,497; 7,321,184; and 7,457,611 (the "HELLSTAR Trademarks").

2. The HELLSTAR Trademarks are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the HELLSTAR Trademarks are attached hereto as **Exhibit 1**.

[1] Plaintiff is filing a motion to temporarily seal Schedule A simultaneously with the filing of this Complaint.

3. Defendants are improperly advertising, marketing and/or selling unauthorized and illegal products infringing upon Plaintiff's HELLSTAR Trademarks (the "Counterfeit Products"). By selling Counterfeit Products that purport to be genuine and authorized products using the HELLSTAR Trademarks (the "HELLSTAR Products"), Defendants cause confusion and deception in the marketplace.

4. Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on Shein (the "Marketplace Platform").

5. Defendants design their online marketplace accounts to appear to be selling genuine products bearing the HELLSTAR Trademarks while selling inferior imitations of such products.

6. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the HELLSTAR Trademarks, as well as to protect consumers from unknowingly purchasing Counterfeit Products.

8. As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and goodwill and, therefore, seeks injunctive and monetary relief.

9. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in New York and in this Judicial District, and the acts and events

giving rise to this lawsuit of which each Defendant stands accused were undertaken in New York and in this Judicial District.

10. In addition, each Defendant has offered to sell and ship Counterfeit Products into this Judicial District.

## SUBJECT MATTER JURISDICTION

11. This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and 28 U.S.C. §§ 1331, 1338(a)–(b).

12. This Court has jurisdiction over the unfair deceptive trade practices claims in this action that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

13. Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and (3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District; derive substantial revenue from business transactions in New York and in this Judicial District; and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

14. In addition, because Plaintiff sells genuine merchandise and apparel bearing the HELLSTAR Trademarks in this Judicial District, Defendants' illegal counterfeiting and infringing actions have injured Plaintiff in this Judicial District through lost sales and customers. Defendants'

actions have also harmed Plaintiff by confusing and deceiving consumers in this Judicial District who can view Defendant Internet Stores such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

15. For example, Defendant Internet Stores accept orders for Counterfeit Products from and offer shipping to New York addresses located in this Judicial District. Exemplar screenshots of the shopping cart from Defendant Internet Stores allowing Counterfeit Products to be shipped to this Judicial District are attached as Exhibit 2 to the Declaration of Sebastian Santoro.

16. Upon information and belief, Defendants also were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in New York and in this Judicial District, through accounts (the "User Account(s)") on e-commerce sites including the Marketplace Platform, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them. Through these User Accounts, consumers in the United States, including New York and this Judicial District, can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products, and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the United States, including New York and this Judicial District, as a means for establishing regular business with the United States, including New York and this Judicial District.

17. Defendants have transacted business with consumers located in the United States, including New York and this Judicial District, for the sale and shipment of Counterfeit Products.

18. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) because Defendants have committed acts of trademark counterfeiting in this Judicial District and do substantial business in this Judicial District.

**THE PLAINTIFF**

19. Plaintiff HELLSTAR is a corporation organized under the laws of California with its principal place of business in California.

20. Plaintiff is the exclusive owner of the HELLSTAR Trademarks as follows:

| **U.S. TM Reg. No.** | **Trademark** | **Registration Date** |
|---|---|---|
| 6,568,497 | HELLSTAR | Nov. 23, 2021 |
| 7,321,184 | | Mar. 05, 2024 |
| 7,457,611 | HELLSTAR | Jul. 23, 2024 |

## THE DEFENDANTS

21. Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China.

22. Defendants are merchants on online e-commerce platforms, including the Marketplace Platform.

## THE HELLSTAR PRODUCTS

23. Plaintiff is an independent clothing brand co-founded in 2020 by fashion entrepreneur and creative director Sean Holland. HELLSTAR is known for its graphic-heavy design informed by punk and heavy metal influences, which have become central to its brand identity. Through organic growth, widespread cultural recognition and high-profile collaborations with globally recognized partners such as Adidas and World Wrestling Entertainment ("WWE"), Plaintiff has distinguished itself within the apparel and streetwear industry.[2] Plaintiff's cultural reach is reflected in its adoption by professional athletes, including football star Puka Nacua and basketball superstar Anthony Edwards.[3]

24. HELLSTAR further distinguishes itself from others in the industry through innovative features such as Near Field Communication technology embedded in its clothing to help verify authenticity, local production of its clothing, and strong sales performance driven by

---

[2] COMPLEX STAFF, *The adidas Originals x Hellstar Collab was the Epitome of Streetwear Culture*, Complex (Nov. 3, 2025), *https://www.complex.com/pop-culture/a/complexstaff3/adidas-originals-hellstar-collab-complexcon-collab*; COMPLEX STAFF, *How to Buy the New Hellstar WWE Drop on Complex Shop*, Complex (Apr. 23, 2025), *https://www.complex.com/style/a/complexstaff3/hellstar-wwe-complex-shop*.

[3] Ian Servantes, *Anthony Edwards Reveals His Sneaker Collaboration Debut With Hellstar*, Women's Wear Daily (Feb. 10, 2026, at 11:09am), *https://wwd.com/footwear-news/sneaker-news/hellstar-adidas-anthony-edwards-2-reveal-1238557179*; Haley Sawyer, *How three former Burbank High teammates used fashion to create a 7-on-7 football program*, L.A. Daily News (Feb. 6, 2024, at 12:09PM PST), https://www.dailynews.com/2024/02/06/how-three-former-burbank-high-teammates-used-fashion-to-create-a-7-on-7-football-program.

its highly successful limited-edition product releases, positioning Plaintiff as a recognized and influential force in the industry. As part of its product offerings, HELLSTAR releases limited, elevated apparel items in “Capsules” that are not reproduced once the respective Capsule is sold out.[4] It also offers products through its Studios and Sports apparel lines.

25. From the date of the creation of the first HELLSTAR Products to the present, Plaintiff and its authorized retailers are and have been the sole and official source of genuine HELLSTAR Products in the United States.

*Examples of Genuine HELLSTAR Products Bearing the HELLSTAR Trademarks*






---

4 *See* CAPSULES - HELLSTAR, *https://hellstar.com/pages/capsules-2*.

26. The HELLSTAR Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the HELLSTAR Trademarks in the industry and to consumers.

27. The registrations for the HELLSTAR Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b).

28. Each of the HELLSTAR Trademarks qualifies as a famous mark, as that term is used in 15 U.S.C. §1125(c)(1), and each has been continuously used and never abandoned. Since Plaintiff launched the HELLSTAR Products, Plaintiff has followed a defined strategy for positioning its brand, marketing, and promoting the product line in the industry and to consumers, and establishing distribution channels. Plaintiff's promotional efforts for the HELLSTAR Products include the HELLSTAR website (https://hellstar.com), participation in major conventions such as Complex Con, and social media advertising campaigns on Instagram. Plaintiff has expended substantial time, money, and other resources in advertising and otherwise promoting the HELLSTAR Products. As a result, products bearing the HELLSTAR Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from HELLSTAR.

29. The HELLSTAR Products have become enormously popular, driven by Plaintiff's arduous quality standards and innovative trademarked designs. These designs are broadly recognized by consumers as being sourced from Plaintiff. Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from Plaintiff and its HELLSTAR Products.

Case 1:26-cv-05997-APC Document 58-2 Filed 07/28/26 Page 10 of 33

30. Plaintiff owns all rights, including without limitation, the rights to reproduce the trademarked designs in copies, to prepare derivative works based upon the trademarked designs, and to distribute copies of the trademarked designs to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the HELLSTAR Trademarks as the owner of those trademarks.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

31. The success of the HELLSTAR Products has resulted in significant counterfeiting. Plaintiff has identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platform. These Defendant Internet Stores offer for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

32. Defendants have persisted in creating such online marketplaces and internet stores that contribute to the hundreds of billions of dollars of counterfeit goods sold each year. According to an intellectual property rights seizures statistics report issued by U.S. Customs and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $5 billion of seized goods came from China and Hong Kong alone.

33. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine HELLSTAR Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

34. Plaintiff has not licensed or authorized Defendants to use the HELLSTAR Trademarks. None of the Defendants are authorized retailers of genuine HELLSTAR Products.

35. Defendants also deceive unknowing consumers by using without authorization the HELLSTAR Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for HELLSTAR Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine HELLSTAR Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.

36. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information or omitted cities or states.

37. Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

38. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. The Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another,

suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

39. In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[5]

40. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. [6] Rogue servers are notorious for ignoring take down demands sent by brand owners.

41. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. According to the previously cited 2024 U.S. Customs and Border Protection report on seizure statistics, in fiscal year 2024, "97% of [Intellectual Property Rights] seizures in the cargo environment occurred in the de minimis shipments."

42. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

---

[5] *Buyers Beware! ICE HIS and CBP in Boston warn consumers about counterfeit goods during holiday shopping season*, U.S. Immigration and Customs Enforcement (Dec. 11, 2019), https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites")

[6] Rogue internet servers and sellers are a well-known tactic that have even been covered in Cabinet-level agency reports. *See* 2023 Review of Notorious Markets for Counterfeiting and Piracy (available online at https://ustr.gov/sites/default/files/2023_Review_of_Notorious_Markets_for_Counterfeiting_and_Piracy_Notorious_Markets_List_final.pdf) (last visited June 24, 2026).

43. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. Analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

44. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the HELLSTAR Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and New York over the Internet.

45. Each Defendant Internet Store offers shipping to the United States, including New York in this Judicial District, and each Defendant has offered to sell Counterfeit Products into the United States, including New York in this Judicial District.

46. Defendants' use of the HELLSTAR Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

47. Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the HELLSTAR Trademarks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the HELLSTAR Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

48. Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to

Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and the HELLSTAR Products.

**<u>FIRST CAUSE OF ACTION</u>**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114 *et seq.*)**

49. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–48 of this Complaint.

50. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered HELLSTAR Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The HELLSTAR Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from the HELLSTAR Products.

51. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the HELLSTAR Trademarks without Plaintiff's permission.

*Exemplars of Genuine Products Incorporating the HELLSTAR Trademarks*



*COMPARED TO*
*Exemplars of Counterfeit Products Sold by Defendants*






52. Plaintiff is the registered owner of the HELLSTAR Trademarks and official source of HELLSTAR Products. The United States Registrations for the HELLSTAR Trademarks are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the HELLSTAR Trademarks and are willfully infringing and intentionally using counterfeits of the HELLSTAR Trademarks. Defendants' willful, intentional, and unauthorized use of the HELLSTAR Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

53. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

54. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

55. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known HELLSTAR Trademarks.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a) *et seq.*)

56. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–48 of this Complaint.

57. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

58. By using the HELLSTAR Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

59. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. § 1125.

60. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**THIRD CAUSE OF ACTION**
**UNFAIR COMPETITION (New York Common Law)**

61. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–48 of this Complaint.

62. Plaintiff has not licensed or authorized Defendants to use the HELLSTAR Trademarks, and none of the Defendants are authorized retailers of genuine HELLSTAR Products.

63. Defendants knowingly and intentionally trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's HELLSTAR Trademarks.

64. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

65. Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

66. In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are HELLSTAR Products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking HELLSTAR Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the text and metadata of the Defendant Internet Stores; and (iii) taking other steps to deceive and confuse the consuming public.

67. On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

68. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**DEMAND FOR RELIEF**

69. Plaintiff hereby demands judgment as follows:

a. That Defendants, their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i. using the HELLSTAR Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any

product that is not a genuine HELLSTAR Product or is not authorized by Plaintiff to be sold in connection with the HELLSTAR Trademarks;

ii. passing off, inducing, or enabling others to sell or pass off any product as a genuine HELLSTAR Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the HELLSTAR Trademarks;

iii. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

iv. further infringing the HELLSTAR Trademarks and damaging Plaintiff's goodwill;

v. otherwise competing unfairly with Plaintiff in any manner; and

vi. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff trademark including the HELLSTAR Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

b. Entry of an Order that the Marketplace Platform and any other online marketplace account through which Defendants are selling Counterfeit Products

disable and cease providing services for any accounts Defendants use in connection with the sale of Counterfeit Products;

c. That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the HELLSTAR Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

d. In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the HELLSTAR Trademarks.

e. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

f. That the Court award any and all other relief that it deems just and proper.

**DEMAND FOR JURY TRIAL**

70. Plaintiff hereby demands a trial by jury.

Dated: July 15, 2026

Respectfully,

*/s/ Martin Yi*

Martin Yi
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
myi@bsfllp.com

*Counsel for Plaintiff HELLSTAR STUDIOS INC.*

# Exhibit 1

# United States of America

## United States Patent and Trademark Office

# HELLSTAR

**Reg. No. 6,568,497**

**Registered Nov. 23, 2021**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

Holland, Sean (UNITED STATES INDIVIDUAL)
12300 Sherman Way, B192
North Hollywood, CALIFORNIA 91605

CLASS 25: Shirts; Sweatpants; Hooded pullovers; Hooded sweatshirts; Graphic T-shirts; Short-sleeved or long-sleeved t-shirts; T-shirts

FIRST USE 8-7-2020; IN COMMERCE 8-7-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 90-475,971, FILED 01-20-2021




Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# TRADEMARK ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

ETAS ID: TM864730

| | |
|---|---|
| **SUBMISSION TYPE:** | RESUBMISSION |
| **NATURE OF CONVEYANCE:** | ASSIGNMENT OF THE ENTIRE INTEREST AND THE GOODWILL |
| **RESUBMIT DOCUMENT ID:** | 900817351 |
| **SEQUENCE:** | 1 |

**CONVEYING PARTY DATA**

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| Sean Holland | | 12/29/2023 | INDIVIDUAL: |

**RECEIVING PARTY DATA**

| | |
|---|---|
| **Name:** | Hellstar Studios Inc. |
| **Street Address:** | 2618 E 55TH STREET |
| **City:** | HUNTINGTON PARK |
| **State/Country:** | CALIFORNIA |
| **Postal Code:** | 90255 |
| **Entity Type:** | Corporation: CALIFORNIA |

**PROPERTY NUMBERS Total: 2**

| Property Type | Number | Word Mark |
|---|---|---|
| **Registration Number:** | 6568497 | HELLSTAR |
| **Serial Number:** | 97791250 | |

**CORRESPONDENCE DATA**

**Fax Number:** 8183012069

***Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.***

**Phone:** 8184716653
**Email:** xavier@panyxlaw.com
**Correspondent Name:** Xavier Alexander Cook
**Address Line 1:** PO Box 150
**Address Line 4:** Burbank, CALIFORNIA 91503

| | |
|---|---|
| **ATTORNEY DOCKET NUMBER:** | 1001 |
| **NAME OF SUBMITTER:** | Xavier Cook, Esq. |
| **SIGNATURE:** | /Xavier Cook/ |
| **DATE SIGNED:** | 12/29/2023 |

**Total Attachments: 4**
source=Assign 12.28.23#page1.tif

source=Assign 12.28.23#page2.tif
source=Assign 12.28.23#page3.tif
source=Assign 12.28.23#page4.tif

# Trademark Assignment

This **Trademark Assignment** (hereinafter referred to as the "Assignment") is made and entered into on December 28, 2023 (the "Effective Date") by and between the following parties:

**Sean Holland**
11525 Chandler Blvd #210
North Hollywood, California 91601

(the "Assignor")

**AND**

**Hellstar Studios Inc.**
a California S-Corporation
2618 E 55TH STREET
Huntington Park, California 90255

(the "Assignee")

WHEREAS, the Assignor is the sole and rightful owner of certain trademarks and/or service marks and the corresponding registrations and/or applications for registration (collectively referred to as the Trademarks) set forth in **Exhibit A** attached hereto; and

WHEREAS, the Assignee desires to purchase or acquire the Assignor's right, title, and interest in and to the Trademarks; and

WHEREAS, the Assignor and Assignee are both duly authorized and capable of entering into this Assignment.

NOW, THEREFORE, for valuable consideration, the receipt of which is acknowledged, the parties hereto agree as follows:

## 1. ASSIGNMENT.

The Assignor does hereby sell, assign, transfer and set over to Assignee all of its right, title, and interest in and to the Trademarks in the United States and all jurisdictions outside the United States including, without limitation, the ongoing and existing portion of the Assignor's business associated with the Trademarks, together with the goodwill of the business connected with and symbolized by the Trademarks (including, without limitation, the right to sue and recover for any past or continuing infringements or contract breaches related to the Trademarks, the right to renew any registrations included in the Trademarks, the right to apply for trademark registrations within or outside the United States based in whole or in part upon the Trademarks, and any priority right that may arise from the Trademarks), the same to be held and enjoyed by Assignee as fully and

entirely as said interest could have been held and enjoyed by Assignor had this sale, assignment, transfer and conveyance not been made.

The Assignor authorizes the United States Patent and Trademark Office and any other applicable jurisdictions outside the United States to record the transfer of the registrations and/or registration applications set forth in Exhibit A to Assignee as recipient of Assignors entire right, title and interest therein.

Assignor further agrees to upon the request and at the expense of Assignee: (a) cooperate with Assignee in the protection of the trademark rights and prosecution and protection of foreign counterparts; (b) execute, verify, acknowledge and deliver all such further papers, including registration applications and instruments of transfer; and (c) perform such other acts as Assignee lawfully may request to obtain or maintain the Trademarks and any and all applications and registrations for the Trademarks.

**2. WARRANTY.**

Assignor warrants that Assignor is the legal owner of all right, title and interest in the Trademarks, that the Trademarks have not been previously pledged, assigned, or encumbered and that this Assignment does not infringe on the rights of any person.

**3. GOVERNING LAW.**

This Assignment is governed by, and is to be construed in accordance with the laws of the State of California.

**4. ENTIRE AGREEMENT.**

This Assignment constitutes the sole agreement of the parties and supersedes all oral negotiations and prior writings with respect to the subject matter hereof.

**5. SEVERABILITY.**

If one or more provisions of this Assignment are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. If the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision will be excluded from this Assignment, (ii) the balance of the Assignment will be interpreted as if such provision were so excluded and (iii) the balance of the Assignment will be enforceable in accordance with its terms.

**6. ADVICE OF COUNSEL.**

EACH PARTY ACKNOWLEDGES THAT, IN EXECUTING THIS AGREEMENT, SUCH PARTY HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND HAS READ AND UNDERSTOOD ALL OF THE TERMS AND

PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT WILL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

**IN WITNESS** whereof, the Assignor and Assignee have executed this Agreement as of the Effective Date.

**Assignor:**

DocuSigned by:

By: Sean Holland Date: 12/29/2023

E95A579EDA5947C...

Sean Holland

**Assignee:**

DocuSigned by:

By: Sean Holland Date: 12/29/2023

E95A579EDA5947C...

Hellstar Studios Inc.

# Exhibit A

**List of Trademark/Service Mark**

Trademark/Service mark: Hellstar
Registration/Application number: 6568497
Dated: January 20, 2021

Trademark/Service mark: Hellstar Girl
Registration/Application number: 97791250
Dated: February 12, 2023

# United States of America
## United States Patent and Trademark Office

**Reg. No. 7,321,184**

**Registered Mar. 05, 2024**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

HELLSTAR STUDIOS INC. (CALIFORNIA CORPORATION)
2618 E 55TH STREET
HUNTINGTON PARK, CALIFORNIA 90255

CLASS 25: Bras; Hats; Lingerie; Pajamas; Pants; Sandals; Shirts; Shoes; Shorts; Socks; Sweatpants; Sweatshirts; Underwear; Bottoms as clothing; Graphic T-shirts; Short-sleeved or long-sleeved t-shirts; Short-sleeved shirts; Tops as clothing; Hooded sweatshirts; Shirts and short-sleeved shirts

FIRST USE 8-7-2020; IN COMMERCE 8-7-2020

The mark consists of a silhouette of a woman's face in profile facing to the left, there is a five-pointed star to the left of her forehead, flames emerge out of the right side of her face, the flames are rotated ninety degrees clockwise, the mark is bordered by a single-lined circle.

SER. NO. 97-791,250, FILED 02-12-2023

Katherine Kelly Vidal

Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America
## United States Patent and Trademark Office

HELLSTAR

**Reg. No. 7,457,611**

**Registered Jul. 23, 2024**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

Hellstar Studios Inc. (CALIFORNIA CORPORATION)
2618 E 55TH STREET
HUNTINGTON PARK, CALIFORNIA 90255

CLASS 25: Hats; Pants; Shirts; Shoes; Hooded pullovers; Hooded sweat shirts; Long-sleeved shirts; Shirts and short-sleeved shirts; Denim pants; Sweat pants; Sweat shirts; Tee shirts

FIRST USE 7-21-2023; IN COMMERCE 7-21-2023

The mark consists of stylized and slanted intersecting letters "H" and "S" such that the tail of the "S" forms the crossbar of the "H," there is a five point star at the left of the "H" crossbar, the word "HELLSTAR" underlines the letters.

SER. NO. 98-113,805, FILED 08-02-2023

Katherine Kelly Vidal

Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.